```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                      TAMPA DIVISION
```

UNITED STATES OF AMERICA

    v.                                      CASE NO. 8:25-cr-387-VMC-NHA

TERELL BAILEY

### ORDER

This matter is before the Court pursuant to the United States's Motion for Revocation (Doc. # 31) of the Magistrate Judge's Order of Bond (Doc. # 21). For the reasons set forth below, that Motion is granted.

### I.  Procedural History

On July 17, 2025, Terell Bailey, was charged by criminal complaint with one count of transmission of threats in interstate commerce, in violation of Title 18 United States Code 875(c). (Doc. 1). A grand jury later returned an Indictment against Bailey, charging him two counts of transmission of threats in interstate commerce, in violation of Title 18 United States Code 875(c). (Doc. 16).

At Bailey's initial detention hearing, the Magistrate Judge determined that there were no appropriate conditions of release that could assure Bailey's appearance or the safety of the community. (Doc. 10). Accordingly, Bailey was ordered detained pending trial. (*Id.*). On August 7, 2025, Bailey filed a Motion to Reopen the Detention Hearing. (Doc. 14).  It was appropriate to

1

reopen the detention hearing, Bailey argued, because his grandparents—who reside in the state of New Jersey—would be willing to serve as Bailey's third-party custodians. (Doc 14 at 2.) The next day, the Magistrate Judge issued a Notice of Hearing. (Doc. 15).

A second hearing was held on August 20, 2025, relating to Bailey's Motion to Reopen Detention. (Doc. 23). In support of his position, Bailey argued that the availability of his grandparents to provide him a place to reside, to act as third-party custodians, and to post a property bond were not previously known to Bailey and warranted the reopening of the detention Hearing. Additionally, Bailey suggested that his grandparents' willingness to serve as third-party custodians and post property on his behalf provided the Court with adequate assurances of Bailey's appearance and could ensure safety of the community. (Doc. 31-2 at 7-11).

The United States made two arguments in opposition to Bailey's Motion to Reopen the Detention Hearing. First, the United States argued that under the plain language of Title 18, United States Code, Section 3142(f)(2), there was no basis to reopen the detention hearing. (Doc. 32-2 at 18). Specifically, the United States pointed out that the proposal of Bailey's grandparents as third-party custodians was not "new evidence" as required by the statute. *Id*. Second, the United States argued that even if the detention hearing were reopened, Bailey should remain detained

2

pending trial because there were no condition or combination of conditions that would reasonably assure the appearance of the Defendant or safety of the community. (Doc. # 31-2 at 18-21).

The Magistrate Judge granted Bailey's Motion to Reopen the Detention Hearing. (Doc. # 21). The Magistrate Judge further concluded that the United States failed to establish that no conditions can reasonably ensure the safety of the community or ensure the Defendant's future appearance in Court, if released. (Id.). The Magistrate Judge also denied the United States' request to stay the Defendant's release.

The United States immediately filed a Time-Sensitive Motion to Stay Release Pending Review and Motion for Revocation of the Magistrate Judge's Order of Bond. (Doc. 20). This Court granted the United States's Motion to Stay (Doc. 22), and on October 2, 2025, held a hearing on the United States's Motion to Revoke the Magistrate Judge's Order of Bond. (Doc. 41).

II. **Legal Standard**

Title 18, United States Code, Section 3145(a)(1) provides that, "[i]f a person is ordered released by a magistrate judge," "the attorney for the Government may file, with the court having original jurisdiction of the offense, a motion for revocation of the order or amendment of the conditions of release." 18 U.S.C. § 3145(a)(1). The Court reviews the United States's detention

3

request *de novo*. <u>United States v. Hurtado</u>, 779 F.2d 1467, 1471-1472 (11th Cir. 1985).

### III. <u>Discussion</u>

#### A. <u>The Detention Hearing was Reopened in Error</u>

Section 3142(f)(2) expressly provides that a detention hearing may only be reopened "if the judicial officer finds that information exists *that was not known to the movant at the time of the hearing* and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2) (emphasis added). "Courts interpret this provision strictly." <u>United States v. Young</u>, No. 2:13-CR-00149-KJD-CWH, 2014 WL 11380770, at *2 (D. Nev., Feb. 25, 2014). Thus, a defendant must establish two essential elements before the issue of detention may be reopened: 1) that information now exists that was not known to a defendant at the time of the initial hearing, and 2) the new information is material to release conditions regarding flight or dangerousness. <u>Id.</u>; <u>see</u> <u>also</u> <u>United States v. Hare</u>, 873 F.2d 796, 799 (5th Cir. 1989).

The rationale for the rule is discussed in <u>United States v. Flores</u>, where the defendant's motion to reopen detention hearing was denied:

> There are very few proceedings in federal practice which

4

> encourage a party to be less than diligent in bringing forth all material evidence the first time a hearing is held. Generally, reconsideration of a decided matter based on the presentation of additional evidence requires good cause for the failure to present that evidence initially. See, e.g., Fed. R. Civ. P. 60(b); United States v. Oliver, 683 F.2d 224 (7th Cir. 1982) (failure to exercise diligence in locating witnesses before criminal trial precludes new trial based on newly discovered evidence). A rule that would not discourage a party for failing to acquire readily available evidence for presentation the first time is a rule that encourages piecemeal presentations. Judicial efficiency is not served by such a practice.

856 F. Supp. 1400, 1406 (E.D. Cal. 1994).

Reopening Bailey's detention hearing would encourage the kind of piecemeal presentation that Section 3142(f) is intended to protect against. As the United States correctly argued, Bailey failed to proffer information that was not known to him at the time of the initial detention hearing. The existence of Bailey's grandparents and their potential availability as custodians is not new information. See United States v. Miller, No. 20-71, 2021 WL 490248, at *2 (E.D. Tex., Feb. 10, 2021) (explaining that a friend's willingness to serve as a custodian was not new evidence); United States v. Zamorano, No. 1:19-CR-531-WJM, 2020 WL 1820498, at *5 (D. Colo. Apr. 10, 2020) (proposal of new third-party custodians is not new evidence because the "test is whether the information itself was unknown at the time of the hearing, not whether a plan of release has now been 'verified' or a relative or acquaintance is now willing to serve as a third-party custodian"),

5

aff'd, No. 1:19-CR-531-WJM, 2020 WL 2512839 (D. Colo. May 15, 2020); Young, 2014 WL 11380770, at *3 (denying motion to reopen detention hearing in part because defendant's mother's willingness to serve as third party custodian "could have been presented at the time of the detention hearing and cannot be considered new information at this time").

Nor is the fact that Bailey's grandparents own a home that could be posted on Bailey's behalf new information that justifies reopening the detention hearing. Indeed, Bailey had previously lived with his grandparents at their home. Bailey could, and should, have addressed his grandparent's availability as custodians at the initial detention hearing or asked to continue the detention hearing to a later date, at which his grandparents could have attended. See 18 U.S.C. § 3142(f) (providing a continuance of a motion for detention as a matter of right so long as it does not exceed five days absent a showing of good cause).

To the extent Bailey's participation in anger management classes while in jail was new information that could not have been presented at the first detention hearing, the Court does not consider Bailey's participating in these classes sufficiently material to alter the dangerousness analysis. Bailey's participation in programming while detained, while admirable, does not support releasing him from detention. See Hare, 873 F.2d at 799 ("[T]he district court did not abuse its discretion in finding

6

that Hare's work as an electrician and selection as a trustee while in detention is not sufficiently material to the issue of dangerousness to justify a second hearing.").

Because the requirements of Section 3142(f)(2) were not met, the detention hearing should not have been reopened, and the original detention order should have remained in effect. The procedural error in reopening the detention hearing, by itself, warrants revocation of the Magistrate Judge's Release Order. (Doc. # 21).

### B. Even if the Magistrate Judge did not err in Reopening the Detention Hearing, the Defendant Should Be Detained

Even if the Magistrate Judge did not err in reopening the detention hearing, Bailey should, nevertheless, be detained pending trial.

"A criminal defendant must be released before trial on personal recognizance or upon execution of an unsecured bond, unless the court determines that release will not reasonably ensure his appearance or will endanger the safety of others." Taylor v. Pekerol, 760 F. App'x 647, 653 (11th Cir. 2019) (citing 18 U.S.C. § 3142(b)). On the other hand, a defendant must be detained pending trial if he presents a serious risk of flight or poses a danger to another person or members of the community. United States v. Montalvo-Murillo, 495 U.S. 711, 717 (1990).

A defendant may be detained based either on the risk of

7

nonappearance or his dangerousness; the government is not required to establish both. United States v. King, 849 F.2d 485, 488-89 (11th Cir. 1988). Before detaining a defendant pending trial, however, the government must establish by a preponderance of the evidence that a defendant poses a serious risk of flight, or show by clear and convincing evidence that he is a danger to another person or the community. United States v. Quartermaine, 913 F.2d 910, 917 (11th Cir. 1990). "Clear and convincing evidence exists when the evidence induces 'an abiding conviction that the truth of its factual contentions are highly probable.'" United States v. Ingram, 415 F. Supp. 3d 1072, 1078 (N.D. Fla. 2019) (quoting Colorado v. New Mexico, 467 U.S. 310, 316 (1984)). "Accordingly, to show by clear and convincing evidence that a defendant poses a danger to the community, the United States need not prove that there is a 100% chance that a defendant will commit harmful acts. Rather, the concept of danger entails probability of harm and, thus, demonstrating a substantial risk of harm is sufficient." Id. (citing United States v. Shea, 749 F. Supp. 1162, 1167 (D. Mass. 1990)).

The United States has not established that there are no conditions of release that will assure Bailey's appearance at trial. Nevertheless, the United States has presented clear and convincing evidence that there are no conditions of release that can reasonably assure the safety of the community. Quartermaine,

8

913 F.2d at 917. Under 18 U.S.C. § 3142(g), the Court must consider four factors as part of the evaluation: "(1) the nature and circumstances of the offense charged"; "(2) the weight of the evidence against the person"; (3) "the history and characteristics of the person"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." As explained in more detail below, these factors demonstrate that Bailey should be detained pending trial.

1. **Nature and Circumstances of the Offense Charged**

Not only did Bailey make frightening and threatening comments to four individuals — including the President of the United States, the Attorney General of the United States, the head of the United States Federal Bureau of Investigation, and the CEO of X (formerly known as Twitter) — he did so in a horrific manner. His anger and threats of murder left the Court with a firm impression that the defendant could, and would, commit the violent acts he promised if he had an opportunity to do so.

Bailey's threats of violence did not stop with the conduct charged in the Indictment. In addition to the threats directed at political officials, at the hearing, the Court had the benefit of reviewing additional messages sent by Bailey using an encrypted messaging application and one additional video, which Bailey recorded of himself. (Doc. ## 42, 42-1). In both, Bailey made deeply concerning threats fueled by an intense hatred of Israeli

9

and Jewish people. He promised to, among other disturbing ideations, kill all Jewish people he encountered.

Bailey claims that his words are not a reflection of his real beliefs or character but rather, were an aberration caused by a moment of anger over the public controversy surrounding the Jeffrey Epstein case and the conflict between Israel and Hamas. The Court is not persuaded. Given the number of threats over time, the Court determines that Bailey has displayed a dangerous pattern of aggression and true threats towards those with whom he disagrees. The charged threats are not mere aberrations. The United States presented a plethora of evidence demonstrating that Bailey is deeply involved in extremist, hateful beliefs that he considers justification for violence. The nature and circumstances of the offense favor detention.

**2. Weight of the Evidence**

The weight of the evidence, too, favors detention. Bailey admitted to making the threats charged. Additionally, evidence of Bailey's threats were located on the electronic devices seized from Bailey's home. Based on the evidence presented, the Court also concludes that Bailey's words constitute true threats. Bailey's message to his Victims was clear: "I'll fucking kill you on sight;" "I will fucking kill you," "I will fucking kill you if I ever fucking see you." (Doc. ## 42, 42-1). Bailey certainly intended to communicate a serious expression of violence. In fact,

he explicitly said as much when he repeated that he was not joking and that he meant every word he said. And in reviewing the tone and volume of Bailey's voice in the videos, Bailey's intent to communicate a true threat is particularly clear. Additionally, it appears that Bailey had considered putting his plan to kill in motion: he made multiple statements surrounding his plan to travel to X's headquarters and kill X's CEO. This factor weighs in favor of detention.

While the weight of the evidence is the least important factor, it weighs in favor of detention. See United States v. Motamedi, 767 F.2d 1403, 1408 (9th Cir. 1985) ("[T]he weight of the evidence is the least important of the various factors.").

### 3. History and Characteristics

While Bailey has no criminal history, as explained above, Bailey has demonstrated a pattern of threatening violence. The Court viewed at least two videos in which Bailey threatened violence in an infuriated manner. It also appears that Bailey has access to the very items with which he threatened to kill his victims. Indeed, several of Bailey's threats referenced murdering his victims with "my machete." (Doc. ## 42, 42-1). When Bailey was interviewed, he specifically told federal agents that he possessed a machete and a bow and arrow. Although the bow and arrow were located, that machete was not found in Bailey's home when it was searched at least one week following his arrest.

11

Notably, Bailey had instructed a family member to remove certain items from his home. One of those items was a desktop computer — the same desktop computer where the additional threats and videos were found. While there was testimony that no family member removed a machete from Bailey's home, the Court is convinced that Bailey does, in fact, own a machete. After all, if the existence of a machete were mere bluster, why would defendant have told law enforcement during his interview that he owns a machete? And why would he frequently threaten to murder others with his machete if he did not own such a weapon?

The Court finds this factor, on balance, weighs in favor of detention.

**4. Danger to the Community**

The Court was impressed by Bailey's family members and the love and support they have demonstrated for Bailey. That said, the Court is not convinced that Bailey's grandparents can ensure that Bailey refrains from issuing more violent threats or from implementing his threats with violent acts.

Particularly telling is the testimony during the first detention hearing of the case agent, who explained that Bailey's threats were some of the most extreme threats that the FBI was investigating and that he had seen. The Court is not surprised. In more than 45 years in the criminal justice system, the video of Bailey threatening the CEO of X was one of the more intimidating,

12

frightening, and violent videos that the Court has viewed. When considered in conjunction with Bailey's pattern of threatening murder and his self-proclaimed hatred for certain groups of people as previously discussed, the Court concludes that Bailey is a danger to the community. There are no conditions of release that can assure the safety of the community if Bailey were released. See United States v. Lightner, 8:24-mj-1028-AAS at (Doc. # 11) (M.D. Fla. Jan. 9, 2024) (ordering defendant detained based on dangerousness where defendant "allegedly admitted to law enforcement that he posted threats concerning his plan to conduct a racially or ethnically motived mass casualty event" and considering these threats "serious, violent conduct").

## IV. Conclusion

The Magistrate Judge erred in reopening the detention hearing. Even if the Magistrate Judge did not err in reopening the detention hearing, the Section 3142(g) factors weigh in favor of detention. The Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community.

THEREFORE, the United States's Motion for Revocation of the Magistrate Judge's Order of Release (Doc. # 31) is GRANTED. The Magistrate Judge's Order of Release (Doc. # 26) is revoked, and Bailey is ordered detained.

The defendant is remanded to the custody of the Attorney

13

General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

IT IS SO ORDERED.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

<u>10/10/2025</u>

Date